# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### FEBRUARY SESSION, 1998



FILED

May 5, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 02C01-9704-CR-00159 |
| | ) | |
| Appellee, | ) | SHELBY COUNTY |
| | ) | |
| V. | ) | |
| | ) | HON. JAMES C. BEASLEY, JR., |
| | ) | JUDGE |
| KENNETH W. JACKSON, | ) | |
| | ) | (AGGRAVATED ASSAULT; |
| Appellant. | ) | RECKLESS ENDANGERMENT ) |

FOR THE APPELLANT:

A.C. WHARTON
District Public Defender

TONY N. BRAYTON
Assistant Public Defender
Criminal Justice Center, Suite 201
201 Poplar Avenue
Memphis, TN 38103

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

GEORGIA BLYTHE FELNER
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN 37243

JOHN W. PIEROTTI
District Attorney General

KAREN COOK
Assistant District Attorney General
Criminal Justice Center, Suite 301
201 Poplar Avenue
Memphis, TN 38103

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Kenneth W. Jackson, appeals as of right from his convictions for aggravated assault and reckless endangerment following a jury trial in the Shelby County Criminal Court. The trial court sentenced Defendant as a Range II Multiple Offender to ten (10) years for the aggravated assault conviction and four (4) years for the reckless endangerment conviction. The sentences were ordered to run consecutively and Defendant was also fined a total of $2,000. In this appeal, Defendant argues that the evidence was insufficient to sustain convictions for aggravated assault and reckless endangerment and that the trial court erred in ordering the sentences to be served consecutively. We affirm the judgment of the trial court.

Angie Sanders and one of her sisters, Nina, were co-signors on a lease to an apartment on East Mallory Street in Memphis. In early August 1995, they went to the apartment to evict another sister, Marilyn Clemmons, from the apartment. Angie Sanders testified that the Defendant, Ms. Clemmons' boyfriend, was present during the eviction and told her that she was "going to get what [she] got coming."

Ms. Sanders did not see the Defendant again until August 22, 1995. Sometime between 12:00 noon and 1:00 p.m. that afternoon, Ms. Sanders pulled into the driveway of her home at 3750 Miami Street. Angie Sanders lived at this home with her twelve-year-old sister, Shaquita, who was with her on this day. As Ms. Sanders pulled into the driveway, she saw the Defendant in a white car parked nearby. She and Shaquita went into the house, and each went to their respective bedrooms. Ms. Sanders' bedroom is located on the front of the house facing the

street and has two big windows, with each one providing a view of the street. Angie Sanders watched Defendant from the windows, and she saw him pass her house two or three times in the white car. As he passed the house the last time, Ms. Sanders saw Defendant point a gun toward the house. She then yelled for Shaquita to "hit the floor" because Shaquita was on her way out of her bedroom going toward the front of the house. Angie Sanders heard shots and immediately called the police.

Testimony at trial revealed that there were four bullet holes in the front of Ms. Sanders' home, and that two of the bullets had actually entered the home striking an interior wall. Memphis Police Officer Jamie Joyner testified that he arrived at the scene about !:00 p.m., and that Shaquita "just sat there just real scared stiff and tears dripping down off her face." According to Officer Joyner, Ms. Sanders was "real panicked, real trembling, nervous, scared." No one was physically injured.

The Defendant testified on his own behalf and stated that at the time of the shooting he was at his mother's house where he also lived. He said that he had been at Marilyn Clemmons' house earlier that day before driving back to his mother's house. He denied ever previously having any cross words with Angie Sanders. He also denied even being present when Angie Sanders evicted Marilyn Clemmons in early August.

Marilyn Clemmons, sister of Angie Sanders, also testified for the defense. She stated that Defendant had been at her house the morning of August 22, 1995. Defendant was babysitting Ms. Clemmons' children while she went to report her sister Angie Sanders to the police for taking her possessions when the locks were

changed on her former residence. She said that she arrived back home between 12:00 noon and 1:00 p.m. on that day. She testified that Defendant then left to go home to his mother's house. She said that Defendant drove her blue Chevrolet Nova to his mother's house. Approximately ten minutes after Defendant left, Angie Sanders called her and asked to speak to Defendant. Ms. Clemmons then called Defendant at his mother's house where he said he had just arrived.

Ms. Clemmons testified that the distance between her home and Angie Sanders' is a twenty (20) to twenty-five (25) minute drive. She said that the distance from her home and Defendant's mother's house is approximately a ten (10) to fifteen (15) minute drive. According to Ms. Clemmons, the drive from Ms. Sanders' home to Defendant's mother's home is fifteen (15) minutes.

I. Sufficiency of the Evidence

Defendant argues that the evidence presented at trial was insufficient to support his convictions for aggravated assault and reckless endangerment. Specifically, he contends that the evidence was insufficient as to identity.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). On appeal, the

State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Williams, 914 S.W.2d 940, 945 (Tenn. Crim. App. 1995) (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

In this case, in order to support a conviction for aggravated assault, the State must have proven that Defendant intentionally or knowingly committed an assault as defined in Tennessee Code Annotated section 39-13-101, and used or displayed a deadly weapon. Tenn. Code Ann. § 39-13-102(a)(1)(B). In order to support the conviction for reckless endangerment, the proof must show that Defendant acted recklessly by firing shots into Ms. Sanders' home and that that conduct placed or could have placed twelve-year old Shaquita in imminent danger of death or serious bodily injury. Tenn. Code Ann. § 39-13-103(a).

Ms. Sanders unequivocally stated that when she and Shaquita pulled into the driveway of their home that she saw Defendant drive by in a white car. Once inside the house, they went to their respective bedrooms. Ms. Sanders' bedroom is located on the front of the house facing the street, and has two big windows which both provide a view of the street. Ms. Sanders watched Defendant through those windows drive past her house two to three times before actually shooting. Ms. Sanders testified that she actually saw Defendant point a gun toward the house. She told her twelve-year-old sister to "hit the floor," and then she called the police. The police determined that four bullets were fired at Ms. Sanders' house.

When viewing the evidence in the light most favorable to the State, the jury justifiably could have found beyond a reasonable doubt that Defendant was the person who fired the gun at Ms. Sanders' home, and that he did so knowing that Ms. Sanders and Shaquita were inside the house at that time. Ms. Sanders testified that she is positive that the person she saw fire the shots at her house was Defendant. It was certainly within the jury's prerogative to accredit the State's witnesses and to believe their version of the facts rather than Defendant's. As a firearm was used in the commission of this offense, all the elements of aggravated assault as defined in Tennessee Code Annotated section 39-13-102(a)(1)(B) were proven beyond a reasonable doubt.

The nature of this offense, intentionally, knowingly or recklessly firing a gun into an occupied house, certainly meets the standard for reckless conduct. Additionally, the fact that two of the four bullets entered the house, satisfies the requirement that the conduct placed or could have placed Shaquita in imminent

danger of death or serious bodily injury, thereby justifying the reckless endangerment conviction.  This issue is without merit.

## II.  Sentencing

Defendant does not contest the length of his sentences, but he does challenge the manner in which they are to be served.  Defendant was sentenced to ten (10) years as a Range II offender for the aggravated assault conviction and four (4) years as a Range II offender for the reckless endangerment conviction.  The trial court ordered the sentences to be run consecutively.  Defendant contends that the sentences should have been ordered to run concurrently.

When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct.  Tenn. Code Ann. § 40-35-401(d).  This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  There are, however, exceptions to the presumption of correctness.  First, the record must demonstrate that the trial court considered the sentencing principles and all relevant facts and circumstances.  Id.  Second, the presumption does not apply to the legal conclusions reached by the trial court in sentencing.  Third, the presumption does not apply when the determinations made by the trial court are predicated upon uncontroverted facts.  State v. Smith, 898 S.W.2d 742, 745 (Tenn. Crim. App. 1994), perm. to appeal denied, id. (Tenn. 1995).

Our review requires an analysis of: (1) The evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, & -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the facts and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Upon review of the record, we find that the trial court followed proper statutory sentencing procedure, and therefore, review by this Court is de novo with a presumption of correctness.

Consecutive sentences should be imposed only after the proof establishes (1) that the terms imposed are reasonably related to the severity of the offenses committed; (2) the sentence is necessary to protect the public from further criminal acts by the offender; and (3) that the defendant meets at least one of the criteria as set forth in Tennessee Code Annotated section 40-35-115(b). State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995).

In considering whether to order consecutive or concurrent sentences, the court found two factors to be applicable: (1) that Defendant has a record of extensive

-8-

criminal activity; and (2) that he was a dangerous offender. <u>See</u> Tenn. Code Ann. § 40-35-115(b)(2) and (4). The court specifically stated:

> [T]he Court has taken into account the fact that the defendant has a -- is an offender whose record of criminal activity is extensive and also that this is a dangerous offender. For the statute whose behavior indicates little or no regard for human life and no hesitation about a crime in which the risk to human life is high; the Court finds that both of those are applicable.

The record reflects that Defendant had an extensive criminal history. The court found that Defendant had four prior felony convictions, five misdemeanor convictions, and had even violated his probation in the past. We find that this proof is sufficient to support a finding that Defendant's criminal activity has been extensive. <u>See</u>, <u>e.g.</u>, <u>State v. Chrisman</u>, 885 S.W.2d 834, 839 (Tenn. Crim. App. 1994). Because only one of the enumerated factors in Tennessee Code Annotated section 40-35-115(b) must be found by a preponderance of the evidence in order to impose consecutive sentencing, we need not address the matter of the trial court finding Defendant to be a dangerous offender under Tennessee Code Annotated section 40-35-115(b)(4). <u>See</u> <u>also</u> <u>Manning v. State</u>, 883 S.W.2d 635, 641 (Tenn. Crim. App. 1994). We further agree with the trial court's finding that it is necessary to protect the public from Defendant and we find that consecutive sentencing is reasonably related to the severity of the offenses committed by Defendant in the case <u>sub</u> <u>judice</u>. <u>See</u> <u>Wilkerson</u>, 905 S.W.2d at 938. This issue is without merit.

Based on the foregoing reasons, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge

CONCUR:


(not participating)
JOSEPH B. JONES, Judge


_____
JOHN H. PEAY, Judge